**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| NICOLE M. JENKINS,<br><br>　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>　　　　　　　　Defendant. | NO.  C10-891-RAJ-JPD<br><br><br>REPORT AND<br>RECOMMENDATION |

Plaintiff Nicole M. Jenkins appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") under Titles II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED.

## I.      FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a forty-one-year-old woman with a high school education living in Kent, Washington, with her fifteen-year-old son. Administrative Record ("AR") at 22-23, 43.  Plaintiff was last gainfully employed as a part-time receptionist for H&R Block in April 2005, but her past work experience also includes employment as a full-time office helper for the Federal Aviation Administration, flight kitchen

REPORT AND RECOMMENDATION - 1

worker for Northwest Airlines, and telephone solicitor for a cable television company. AR at 21, 23-31, 116-17, 121-22, 137-39, 140-44.

Plaintiff asserts that she is disabled due to rheumatoid arthritis and complications. AR at 21. She also testified at the hearing regarding her anxiety disorder. AR at 39-40. She asserts an onset date of April 6, 2005. AR at 111. The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 10, 72, 84-85, 88. Plaintiff timely requested a hearing, which took place on March 26, 2008. AR at 10, 19-69. On April 24, 2008, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform her past relevant work, or alternatively, specific jobs existing in significant numbers in the national economy. AR at 10-18.

After reviewing additional evidence submitted by plaintiff, the Appeals Council denied plaintiff's request for review, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). AR at 1-5. On June 3, 2010, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 3.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*,

53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id*.

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Ms. Jenkins bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id*. If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id*.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.     DECISION BELOW

On April 24, 2008, the ALJ issued a decision finding the following:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2007.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of April 6, 2005 through her date last insured of December 31, 2007.

3. Through the date last insured, the claimant had the following severe impairment: rheumatoid arthritis.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P. Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform slightly less than a full range of light work as defined in 20 CFR 404.1567(b).  Specifically, claimant is able (1) to lift or carry 20 pounds occasionally and 10 pounds frequently; (2) to stand or walk for one hour intervals and for a total of eight hours during a normal workday; (3) to sit for 2 hour intervals and for a total of eight hours during a normal workday; (4) to stoop crouch, balance, and use stairs or ramps on an occasional basis; (5) to do no crawling, climbing, or kneeling; (6) to use foot control on an occasional basis; (7) to use the upper extremities for pushing and pulling on an occasional basis; and (8) to handle and finger on a frequent basis.

6. Through the date last insured, the claimant was able to perform past relevant work as an office helper and telephone solicitor.

7. The claimant was born on XXXXX, 1966[2] and was 41 years old, which is defined as younger individual age 18-49, on the date last insured.

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 5

| | | |
|---|---|---|
| | 8. | The claimant has a least a high school education and is able to communicate in English. |
| | 9. | Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled. |
| | 10. | Through the date[ ] last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed. |
| | 11. | The claimant was not under a disability as defined in the Social Security Act, at any time from April 6, 2005, the alleged onset date, through December 31, 2007, the date last insured. |

AR at 12-17.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err in evaluating plaintiff's alleged mental impairment at steps two and three?

2. Did the ALJ err in evaluating the medical opinions of treating rheumatologist Richard I. Rynes, M.D., and state agency medical consultant Robert Bernardez-Fu, M.D.?

3. Did the ALJ err in assessing plaintiff's residual functional capacity (RFC) at step four?

4. Did the ALJ err in evaluating plaintiff's ability to perform past relevant work at step four, or perform other jobs existing in significant numbers in the national economy at step five?

Dkt. 12 at 1-2; Dkt. 16 at 2.

## VII.   DISCUSSION

### A.   The ALJ Erred in Evaluating Plaintiff's Mental Impairment

Step two of the sequential evaluation process requires a claimant to prove that she has a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c), 416.920(c). An impairment is severe if it significantly limits the plaintiff's ability to perform basic work

REPORT AND RECOMMENDATION - 6

activities.[3]  20 C.F.R. § 404.1521(a), 416.921(a).  When an impairment or combination of impairments consist of no more than a slight abnormality that have only a minimal effect on an individual's ability to work, a finding of non-severe is appropriate.  *Smolen*, 80 F.3d at 1290 (internal citations omitted); *see also* SSR 96-3p, at *1.  Hence, step two acts as a "*de minimis* screening device to dispose of groundless claims."  *Id.*  Plaintiff has the burden of proving that her "impairments or their symptoms affect [his] ability to perform basic work activities."  *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).

In addition to the five-step analysis outlined in 20 C.F.R. § 404.1520, the Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments.  20 C.F.R. § 404.1520a.  When a claimant alleges that he or she has a severe mental impairment, these regulations require application of a "special technique" at the second and third steps of the five-step framework, *Schmidt v. Astrue*, 496 F.3d 833, 844 n. 4 (7th Cir. 2007), and at each level of administrative review.  20 C.F.R. § 404.1520a(a).  "Under the special technique, [the ALJ] must first evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [she has] a medically determinable mental impairment(s)."  *Id.* § 404.1520a(b)(1).  *See also id*. § 404.1528 ("Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception.").  If the claimant is found to have such an impairment, the reviewing authority must then "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," § 404.1520a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of

---

[3] Basic work activities include the abilities and aptitudes necessary to do most jobs including walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, understanding, carrying out and remembering simple instructions, and dealing with changes in a routine work setting.  *See* 20 C.F.R. §§ 404.1521(b), 416.921(b).

decompensation. *Id.* § 404.1520a(c)(3). According to the regulations, if the degree of limitation in each of the first three areas is rated "none or mild," and no episodes of decompensation are identified in the fourth area, then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe." 20 C.F.R. § 404.1520a(d)(1).

The Ninth Circuit has held that an ALJ's failure to follow the 20 C.F.R. § 404.1520a technique requires reversal if the claimant has a "colorable claim of a mental impairment." *Selassie v. Barnhart*, 203 Fed.Appx. 174, 176 (9th Cir. 2006) (reaffirming its holding in *Gutierrez v. Apfel* as it applies to the current version of 20 C.F.R. § 404.1520a and 416.920a, and holding that "[t]he specific documentation requirements . . . are not mere technicalities that can be ignored as long as the ALJ reaches the same result that it would have if it had followed those requirements."). For example, in *Selassie*, the Ninth Circuit reversed where "neither the ALJ nor the Appeals Council engaged in any of the required analysis with regard to [the claimant]'s diagnosed post traumatic stress disorder ("PTSD")." *Id.* at 176.

Plaintiff argues that the ALJ should have followed the 20 C.F.R. § 404.1520a technique in evaluating the severity of plaintiff's anxiety disorder at steps two and three because "the ALJ did not dispute that Jenkins had anxiety as a medically determinable impairment, but doubted its severity." Dkt. 17 at 8; *see* Dkt. 16 at 15-16. In contrast, the Commissioner asserts that "the ALJ gave numerous reasons why Plaintiff did not have a medically determinable mental impairment . . . Plaintiff has cited no medical evidence showing she was diagnosed with or sought treatment for a medically determinable mental impairment, but simply avers that the ALJ nonetheless should have continued with the 20 C.F.R. § 404.1520a evaluation process." Dkt. 16 at 5.

The Court cannot agree with the Commissioner's interpretation of the ALJ's decision, or his argument that "plaintiff has cited no medical evidence showing she was diagnosed with or sought treatment for a medically determinable mental impairment." Dkt. 16 at 5. To the contrary, the ALJ acknowledged that plaintiff "has sought treatment for an anxiety disorder,"

and noted that her "primary care provider [Dr. Bruce Gregg of Auburn Multicare] has diagnosed generalized anxiety and prescribes Buspar and Xanax." AR at 12, 325-63. The ALJ did observe that plaintiff has not specifically "sought mental health care and has never undergone testing . . . While the claimant reported that she has been trying to get counseling with Seattle Mental Health, there are no records to suggest she has actually sought mental health treatment." AR at 12-13. Similarly, the ALJ noted that "[h]er doctor has suggested that if her anxiety was really severe, she could seek treatment at the St. Francis emergency room, but there is no indication that she has sought care there." AR at 13. These facts are clearly relevant to an assessment of the severity of plaintiff's mental impairment, but do not contradict the medical evidence in the record establishing that plaintiff suffers from an anxiety disorder. Significantly, the ALJ did not question Dr. Gregg's credibility, diagnosis of generalized anxiety disorder, or prescribed treatment. AR at 12-13. *See also Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (providing that a claimant's primary care physician's opinion constitutes competent psychiatric evidence, based on clinic observations of the claimant's alleged mental impairment, because such physicians are "qualified to give a medical opinion as to [a claimant's] mental state . . . even though [the physician] is not a psychiatrist."); *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985) ("Disability may be proved by medically-acceptable clinical diagnoses, as well as by objective laboratory findings.").

In fact, the ALJ relied upon Dr. Gregg's treatment notes as grounds for questioning plaintiff's credibility generally. AR at 15. Specifically, Dr. Gregg's treatment notes indicate that plaintiff "seems to be having [a] problem with misuse of her Xanax," her prescribed anti-anxiety medication, because plaintiff has prematurely requested refills on several occasions. AR at 12-13, 325, 338. In January 2008, plaintiff attempted to obtain a refill one day after picking up her medication, prompting Dr. Gregg to inform plaintiff that no further refills would be provided unless plaintiff came in to the office each month. AR at 338. In August 2007, Dr. Gregg began to "taper[] her off [Xanax] as it is becoming a problem medication. If her anxiety

REPORT AND RECOMMENDATION - 9

is not controlled with [Xanax] adequately will refer her to seattle mental health for assistance." AR at 325-26. However, none of Dr. Gregg's notes suggest that plaintiff no longer suffers from generalized anxiety disorder, or no longer requires treatment. The ALJ did not find otherwise.

Because Dr. Gregg's treatment notes from November 2006 through January 2008 establish "a colorable claim" that plaintiff suffers from an anxiety disorder, the ALJ was obligated to follow the 20 C.F.R. § 404.1520a technique for assessing its severity. *See Selassie*, 203 Fed.Appx. at 176. Specifically, the ALJ must consider plaintiff's generalized anxiety disorder in making the requisite findings as to plaintiff's degree of limitation in each of the four functional areas, 20 C.F.R. § 404.1520a(c)(3), as well as "document application of the technique in the decision." *Id*. § 404.1520a(e). As the ALJ did not conduct an appropriate analysis, the Court has no basis to evaluate whether the ALJ properly excluded plaintiff's anxiety as a severe impairment in this case. As a result, this case must be remanded so that the ALJ can consider whether plaintiff's anxiety constitutes a severe impairment. On remand, the ALJ should document his application of the "special technique" for evaluating the severity of mental impairments, as required by 20 C.F.R. § 404.1520a.

Finally, the Court notes that it is evident that the ALJ focused on plaintiff's abuse of her prescribed medication as a basis for concluding that plaintiff was not credible, and therefore not entitled to benefits. AR at 12-16. During the hearing, the ALJ questioned plaintiff regarding the alleged misuse of her prescription medications, and also asked whether plaintiff was on a pain contract or has "problems with using Xanax." AR at 38-41. In his written decision, the ALJ observed that "[m]edical evidence submitted by the claimant's attorney apparently tries to cross out information relating to misuse of Xanax." AR at 12. Despite the ALJ's concerns, however, he did not conduct a Drug and Alcohol Analysis

("DAA") relating to the plaintiff.[4]  On remand, if the ALJ believes a DAA is appropriate, then an analysis should also be included.[5]

### B. The ALJ Erred in His Evaluation of the Medical Evidence

#### *1. Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988).  "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than merely state his conclusions.  "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th

---

[4] Pursuant to the Contract with America Advancement Act, an "individual shall not be considered to be disabled for purposes of [Title II and Title XVI benefits] if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." Pub. L. No. 104-121, 110 Stat. 847 (March 19, 1996) (codified at 42 U.S.C. 423(d)(2)(C), 1382c((a)(3)(J)). Before applying this statute, however, an ALJ must first conduct the five-step sequential-evaluation process and conclude that the claimant is disabled. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). If a claimant is found to be disabled and there is medical evidence of plaintiff's DAA use, then the ALJ must apply the sequential-evaluation process a second time to determine whether plaintiff would still be disabled if he or she stopped using drugs and alcohol. *Id*. It is error for an ALJ to conclude that DAA precludes an award of benefits prior to applying the five-step process first. *Id*.

[5] For example, additional medical evidence submitted to the Appeals Council, which should be considered by the ALJ on remand, as discussed below, indicates that plaintiff tested positive for "street drugs in lab testing" in July 2008. AR at 194-95.

Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence.  *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record.  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them.  In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it.  Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

In this case, plaintiff argues that the ALJ erred in his assessment of the opinions of plaintiff's treating rheumatologist, Richard I. Rynes, M.D., and non-examining state agency medical consultant Robert Bernardez-Fu, M.D.  Dkt. 12 at 1-2.

2. *Dr. Rynes' Opinion*

The parties disagree regarding whether the ALJ erred by rejecting the December 2006 medical opinion of Dr. Rynes, plaintiff's treating rheumatologist since 1999, that plaintiff is limited to performing sedentary work for only six hours per day.  In addition, the parties dispute whether the ALJ's RFC assessment, which provides that plaintiff can finger and handle

on a frequent basis, properly accounts for Dr. Rynes' opinion regarding plaintiff's ability to use her hands. *See* Dkt. 12 at 6-8; Dkt. 16 at 6-7.

Specifically, Dr. Rynes opined that plaintiff "should have a sedentary job and should probably be limited to six hours a day. She should have breaks in between using her hands with things like typing. She needs to have a vocational study to make sure that she is in the correct position to use her hands and have splints if she is using her fingers. The splint should be for the wrist." AR at 409.

The ALJ asserted that "I have given full weight to [Dr. Rynes'] opinion concerning how the claimant should use her hands" because "[t]he claimant said that she could not type or even write more than a sentence or two, but Dr. Rynes indicated that she would need to take breaks from long term hand use." AR at 15-16. However, the ALJ did not afford similar weight to Dr. Rynes' opinion concerning plaintiff's other limitations. Specifically, the ALJ asserted that although "Dr. Rynes is a treating specialist, he has not explained the basis for concluding that the claimant is limited to six hours of work per day, or why she would have limitations in standing and walking since most of the time, her legs are not involved in her complaints." AR at 15. The ALJ also observed that plaintiff's "treatment has been able to reduce her symptoms so that, at times she has no signs of rheumatoid arthritis. Also, Dr. Rynes has stated that he did not think her pain was related to rheumatoid arthritis without providing an explanation as to what may be the cause of her pain." AR at 15.

The Court finds that the ALJ has provided clear and convincing reasons for rejecting Dr. Rynes' opinion that plaintiff can work for only six hours per day, and has such difficulty standing and walking that she can only perform a sedentary job. Although Dr. Rynes' treatment notes provide that plaintiff has trochanter bursitis in her hips that has required frequent injections of local anesthesia, his notes also indicate that this treatment has been very successful in relieving tenderness or pain. AR at 281-88, 369, 373, 377, 381, 385, 389, 393, 397, 400, 409. Dr. Rynes has occasionally observed that plaintiff was exhibiting only mild

symptoms, or that plaintiff's "rheumatoid is asymptomatic." AR at 377. Notably, his treatment notes do not indicate that plaintiff has ever reported difficulty standing or walking. The ALJ's reasons for rejecting this part of Dr. Rynes' opinion are therefore supported by substantial evidence.

The Court, however, is persuaded by plaintiff's argument that the ALJ's RFC assessment failed to account for the nonexertional limitations identified by Dr. Rynes relating to plaintiff's ability to use her hands.[6] Dkt. 12 at 8. *See* 20 C.F.R. § 404.1569a(b) (providing that hands may be used to perform exertional functions of lifting, carrying, pushing, or pulling, as well as nonexertional manipulative functions of handling and fingering). Dr. Rynes opined that plaintiff requires breaks when using her hands for activities such as typing, or in other words, fingering. AR at 409. *See* SSR 85-15 (defining "handling" as the ability "to seize, hold, grasp, or turn an object" or "otherwise working primarily with the whole hand or hands," and "fingering" as "picking, pinching, or otherwise working primarily with the fingers."). Furthermore, Dr. Rynes noted that plaintiff requires a wrist splint when fingering, as well as a vocational study to ensure that plaintiff "is in the correct position" to handle or finger objects. AR at 409. Finally, the Court notes that Dr. Rynes' opinion does not provide that plaintiff only requires breaks from "long term" hand use, as asserted by the ALJ. AR at 16.

Thus, the Court cannot find that the ALJ's RFC assessment, which simply provides that plaintiff can "handle and finger on a frequent basis," properly accounts for the nonexertional limitations relating to "how the claimant should use her hands" identified by Dr. Rynes. AR at 13. On remand, the ALJ is directed to reevaluate Dr. Rynes' medical opinions, and expressly discuss the relationship between any limitations relating to plaintiff's ability to handle and finger and the ALJ's RFC assessment.

---

[6] SSR 83-10 defines "frequent" as "occurring from one-third to two-third of the time," and "occasionally" as "occurring from very little up to one-third of the time." SSR 83-10.

3. *Dr. Bernardez-Fu's Opinion*

Plaintiff contends that the ALJ also erred by failing to provide any reason for disregarding the opinion of non-examining state agency medical consultant Dr. Bernardez-Fu, who opined in January 2007 that plaintiff was "capable of light work with limited overhead reaching and occasional handling and fingering, bilaterally." Dkt. 17 at 2; AR at 302. Specifically, Dr. Bernardez-Fu reviewed and affirmed the RFC assessment of an examining state agency medical consultant, Joe Rise. AR at 273-80, 302. The Commissioner responds that "[a]lthough the ALJ did not refer to Dr. Bernardez-Fu by name, he referred to the Physical Residual Functional Capacity assessment that Dr. Bernardez-Fu reviewed and affirmed, so any error would be harmless." Dkt. 16 at 7.

ALJs are obligated to consider the opinions of non-examining state agency physicians that relate to the nature and severity of an impairment, or whether a claimant meets or equals a listing. 20 C.F.R. § 404.1527(f)(2)(ii), 416. 927(f)(2)(ii). These opinions, however, are entitled to less weight than treating or examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (internal citation omitted). An ALJ must evaluate the opinion of a non-examining source, and must explain the weight he assigns it. *See* SSR 96-6p.

The ALJ did not specifically acknowledge or evaluate Dr. Bernardez-Fu's opinion. AR at 15-16. Although the ALJ cited to Mr. Rise's RFC assessment, he failed to explain the weight he afforded it, or provide any reason for rejecting Mr. Rise's finding that plaintiff "could occasionally handle or finger and had limited ability to reach overhead with her left arm." AR at 16, 273-80. In light of the conflict between the opinions of Mr. Rise and Dr. Bernardez-Fu that plaintiff can only occasionally handle and finger, and the ALJ's conclusion that plaintiff can handle and finger on a frequent basis, the ALJ's failure to evaluate these opinions was not harmless. As the Vocational Expert ("VE") testified at the hearing, if plaintiff can only occasionally, as opposed to frequently, handle and finger, this nonexertional limitation greatly reduces the number of jobs that plaintiff can perform. AR at 60-65. The

ALJ also provided no explanation for rejecting the opinion that plaintiff is only capable of limited overhead reaching. On remand, the ALJ is directed to reevaluate the state agency medical consultants' opinions, and discuss their findings regarding plaintiff's ability to reach overhead and handle or finger.

> 4. *A Rebuttal Declaration or Report from a Medical Source that Does Not Provide Any New Medical Evidence Does Not Warrant Remand*

The ALJ held an administrative hearing on this matter on March 26, 2008. AR at 19-69. On April 24, 2008, the ALJ issued his opinion that is the subject of this appeal. As part of his appeal to the Appeals Council, on July 14, 2008, plaintiff submitted additional evidence consisting of a May 26, 2008 declaration issued by Dr. Rynes, as well as an August 31, 2009 Clinical Observation Report completed by registered mental health clinician Richard Lee Hockett, Jr. AR at 186-97, 418-19. Obviously the ALJ did not have an opportunity to consider this evidence. However, the Appeals Council considered it, and made it part of the record. AR at 1-5.

The law on evidence submitted for the first time to the Appeals Council is less than clear. The Commissioner cites *Mayes v. Massanari*, 276 F.3d 453, 463 (9th Cir. 2001), in support of the proposition that Dr. Rynes' 2008 declaration should not be considered, arguing that plaintiff did not demonstrate good cause for failing to produce the evidence prior to the administrative hearing. Dkt. 16 at 6. Both parties fail to mention Mr. Hockett's 2009 mental health report, but it was also considered by the Appeals Council.[7] AR at 4-5, 418-20. *Mayes* did not hold that to justify a remand based on new evidence, the claimant had the obligation to show good cause for having failed to produce the evidence at the time of the hearing. Instead, the Court held it was unnecessary to decide this specific issue because the plaintiff had conceded it was necessary. *Id.* at 461, n.3. Having conceded the issue, the Court stated "a

---

[7] Mr. Hockett asserts that he has been treating plaintiff for mental health issues approximately one year, and diagnosed her with post-traumatic stress disorder, major depression disorder, and panic disorder with agoraphobia issues. AR at 418-20.

claimant does not meet the good cause requirement by merely obtaining a more favorable report once his or her claim has been denied. To demonstrate good cause, the claimant must demonstrate that the new evidence was unavailable earlier." *Id.* at 463. On the other hand, Dr. Rynes' 2008 declaration and Mr. Hockett's 2009 mental health report were considered by the Appeals Council and made part of the record when plaintiff sought review. This action by the Appeals Council makes these materials part of the record before this Court. *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993).

Here, the Court does not have to decide whether the Dr. Rynes' declaration or Mr. Hockett's mental health report, without more, would justify a remand. Because this matter is being remanded, and these materials are part of the record, the ALJ should consider Dr. Rynes' declaration and Mr. Hockett's report as part of his reevaluation of the medical evidence.

C. The ALJ Erred in Evaluating Plaintiff's RFC

An RFC is the "maximum degree to which [a plaintiff] retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. 404, Subpt. P, App. 2 § 200(c). It is an administrative decision as to the most a plaintiff can do, despite her limitations. SSR 96-8p. The ALJ must assess all of the relevant evidence, including evidence regarding symptoms that are not severe, to determine if the claimant retains the ability to work on a "regular and continuing basis," e.g., eight hours a day, five days a week. *Reddick*, 157 F.3d at 724; *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995); SSR 96-8p.

In this case, the ALJ found that plaintiff retained an ability to perform "slightly less than a full range of light work as defined in 20 C.F.R. § 404.1567(b)," including an ability "to handle and finger on a frequent basis." AR at 13. As discussed above, the ALJ erred at steps two and three in evaluating the medical evidence in the record, including evidence relating to plaintiff's anxiety disorder and ability to handle or finger. *See Smolen*, 80 F.3d at 1290 (providing that where the ALJ erred in finding that a claimant suffered from only one "severe" impairment at step two, the ALJ also failed to consider how the combination of her other

REPORT AND RECOMMENDATION - 17

impairments affected her residual functional capacity to perform work). On remand, the ALJ should reevaluate plaintiff's RFC to reflect any exertional or nonexertional limitations resulting from plaintiff's mental impairments, as well as her rheumatoid arthritis.

D. Remand Requires a Reevaluation of the Analysis at Steps Four and Five

If a plaintiff suffers from significant non-exertional impairments not contemplated by the Medical Vocational Guidelines ("Guidelines"), the ALJ must use the principles in the appropriate sections of the regulations to determine whether plaintiff is disabled. SSR 85-15, at *1; *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007) (providing that the Medical-Vocational Guidelines are inapplicable if a claimant's nonexertional limitations are "sufficiently severe" so as to significantly limit the range of work permitted by the claimant's exertional limitations). If this is the case, the ALJ must call upon a VE, and provide the VE with an accurate and detailed description of the claimant's impairments, as reflected by the medical evidence of record. *Tackett,* 180 F.3d at 1101-02.

Here, the Court has directed a reevaluation of plaintiff's severe impairments, a reevaluation of plaintiff's RFC, and appropriate treatment of the opinions of plaintiff's medical providers and the state agency medical consultants. This will require the ALJ to formulate a hypothetical to the VE that encompasses all of the plaintiff's impairments, if, on remand, the disability analysis proceeds to step five.

VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

DATED this 19th day of January, 2011.

JAMES P. DONOHUE
United States Magistrate Judge